May it please the court, good morning. Daniel P. Hammond for the petitioner, Gladys Mabun-Pestano. This case also comes before this court on appeal of an asylum and related relief denial by both the immigration judge and the Board of Immigration Appeals. The immigration judge's decision was based principally on an adverse credibility finding, which the board affirmed expressly, so that decision of the judge needs to be evaluated. However, unlike the previous case, the issues involving credibility, the discrepancies that were relied upon by the immigration judge were not internal discrepancies within the petitioner's testimony, but rather between that and the testimony of her father, who subsequently was granted asylum, albeit on appeal by the Ninth Circuit after the Borja and Briones cases were decided in Bank, and remanded to the Board of Appeals where it was granted, which is the second issue in this case, the board's refusal to consider, while this case was on appeal at the board, the decision of the Board of Appeals in her father's related case, which had granted asylum. Let me just ask a question then. The father has been granted asylum. What does the violence toward him or toward your client's family members, how does that support her asylum claim directly? Because it appears there's a record of a string of violent acts on the family, but the petitioner did not experience any of that herself. Is that correct? Actual acts of violence, no. Threats, however, yes. What does the record show about the members of the family still remaining in the Philippines? We know that Senator Enrile is still there. Yes. Does she have other relatives that are still there? The record is more or less, there isn't an abundance of evidence, primarily due to the passage of time. This family came to the United States in 1990, and most of the operative facts underlying the asylum claim occurred in the early to mid to late 80s. That would be the only reason, however, our record is confined to that period of time, about which the respondent testified and her father testified. And there is precedent under this circuit's case law where it is very relevant to consider the cases of similarly situated individuals, including family members. There's a second wing case, not the wing case cited in the government counsel's brief, and another case known as Iaguna v. Ashcroft, wherein the case was remanded for that specific purpose because another family member in a similar situation was granted asylum. But I guess my question about that is, looking at the case law, I really don't find much case law to back up your idea that the attacks on the family members would help her in her past persecution argument. I find a lot of case law that it might help her in her future persecution argument upon going back to where she was, but I don't find very much case law, in fact any case law, that suggests it has anything to do with past persecution. Can you give me your best case for that idea? I mean, I looked. I was on the Sinha panel, so I know what Sinha says, and frankly, Sinha doesn't say that. Sinha says that attacks on a family because of race bolsters an argument that attacks on him because of race may happen in the future. But I'm still trying to find the case that suggests that just because her family was attacked or wasn't attacked, that that means there's past persecution. There is a case in a different context that was dealing with the, it was a Chinese case dealing with coercive family planning practices. It's also called Wang v. Ashcroft. Well, but that's quite a different case than this. It is different in that the persecution of the family member was completely different, but it happened while they were both there in the country. And so the only reason this girl's case was not included with her father's was because she happened to be over 21 at the time they arrived in the United States. There is a dearth of case law saying explicitly that if there's past persecution to a family member, that should be considered as virtually an automatic grant to someone. But it's error to not consider the facts, particularly since it was persecution to her father, and this evidence was in the record. There was a motion to remand made in the supplemental brief that was filed to the Board of Appeals that was just completely ignored. Well, I guess my big problem about this is this. If I really can't find the case law to give me anything that would really suggest that the family, attacks on the family or attacks not on the family might lead to past persecution, then you lose your presumption. And frankly, at that point, then, the burden is on you again to establish future persecution. And that's why my colleague Judge Nelson's questions are pretty important. As we're looking at future persecution, we do have some attacks that one could say are about family members, but they're quite a ways away. We have a lot of family members who are still there in the Philippines. They're not harmed. The uncle is a senator. We got no evidence that the NPA is still active in Manila or that they target her for being in this particular organization that she was in. And I guess that's where I'm trying to go. Well, there was testimony to that effect. And even the State Department country report, the most recent one on the website from 2009, does describe incidents. Is that in our record? It's not in the record because, unfortunately, the case was decided in 1998. Well, then, if it isn't in the record, I can't really go looking for it. The court could take judicial notice of the State Department. Have I got any authority for that, taking judicial notice of country reports that aren't in the record? It is a report published by an agency of the United States. So what? I mean, if what's your best case for saying I ought to be able to look at that? Well, I don't have one offhand, Your Honor, but it seems logical to me that that record could be considered. The mere passage of time is the only reason it's not. The record didn't exist at the time. No. And so, therefore, one could file a motion to reopen if there's new evidence. They tried that. They tried to buy a motion to reopen. I understand, but I'm just saying the rules that we go by are not that I should go try to buy something. I understand, Your Honor. It limits what you can and cannot consider. And then the discrepancies the judge referred to were dates, primarily. They didn't go to whether or what happened. It was when things happened. And there was the respondent's father's declaration was attached to her application. Well, frankly, I think your best argument you've already made on her father, and that is I don't understand how you make a credibility determination not based on what one says against what one says someplace else, but when you believe somebody else. That was your best argument, and you made it. I frankly think you might have won on that, but my worry is so what if a credibility determination? Even if I can't find you're credible, then I've got to go to past or future. She's established. Well, the family established past persecution and may be persecuted. I mean, this is why the record should have been remanded, perhaps, if there's confusion over on what basis, because the board's decision is not particularly clear with respect to the father's case, whether it was exclusively past persecution or there was a threat of present or future persecution. It remanded it after considering the main issue it thought was involved in the case, which was was there a nexus between the reason for the persecution or was it simply extortion, which the Borja and Brianna's case made clear. So that would have been a basis to do so. I only have 49 seconds left. I will reserve that if there's no further questions. Thank you. May it please the court. Rebecca Hoffberg on behalf of the United States Attorney General. In this case, as Judge Smith has already pointed out, you can either decide this case on the adverse credibility finding or you can decide it on the merits. Either way, it's our position that we think substantial evidence supports both positions. As far as the inconsistencies go, the reason why the father's testimony was credited in this case was because he was the one who was there for most of the incidents that related to the inconsistencies. Well, but as I read an adverse credibility determination, I've never found a case that suggested that, okay, the adverse credibility determination is made because I have one person in front of me who's giving me one date and I've got her father who's in front of me who's giving me other dates, and therefore because I believe her father and I don't believe her that I'm making an adverse credibility determination. What's your best case for that? I mean, I don't find one. The fact that there's just an inconsistency in general. It doesn't matter who you believe. If you're being presented with conflicting information, I mean, the fact... You mean if you find an adverse credibility just because there's some testimony to the contrary and you don't have any, you don't say one's more credible than the other, but whenever you have an inconsistent story between two witnesses, that makes the applicant not credible? Well, it's internally inconsistent. I mean, it's like any other inconsistency. Well, you know, I think you have a pretty good argument on this issue, but not the one you're making. Well, let me point out also the IJ ignored the fact that Mr. Pestano's declaration had also, he had said at ER 721 that the fire had occurred in 1988. The father himself had inconsistent statements, and she chose, I guess, not to believe him. The father said the rice operation burned after Majano's, his brother's kidnapping in 1983 and continued to operate the farm after that. I had that on page 228. And then petitioner said the entire farm burned down in 1988, at which point the family abandoned the farm, and that's on page 188 to 89. The father testified on page 241 he never gave any money to communist groups. Petitioner testified the father gave the group 200 pesos when they came to her house on page 176. Father testified 219 to 221 people approached petitioner at her home in 1983 or 1984. Petitioner testified on page 174 to 175 in mid-1988 people came to my house. But I guess, again, my colleague's question really goes to the fact that at this particular point in time the IJ determined that he was going to believe or she was going to believe the father rather than the petitioner, but there are inconsistencies in what the father told her too, including the inconsistencies between his testimony he gave at trial and what he gave in his affidavit. So it looks a little uneasy to believe the father who had inconsistencies in his testimony when the petitioner didn't really have any inconsistencies in hers, it's just that it was inconsistent with what her father had said. Well, that's not exactly true. Her statement was also inconsistent with her testimony, not directly inconsistent, but she omitted. Her written statement was filed a month after she entered the U.S., so arguably she would have a better recollection at the time she wrote her written statement of what had happened to her. The fact is she completely omitted from her written statement, and this is on page 717 to 721, she didn't mention anything about anyone coming to her house or that she was a member of an organization in the Philippines, and these go directly to the heart of her claim, this omission. And this statement could have and should have said that a month after she arrived here versus years later when she's testifying in court and says this. Now, I would like to address the fact that as far as her father's claim goes, I'd like to point out that there was an opportunity to consolidate the cases. She couldn't be included as a derivative beneficiary of her father's application because of her age. However, you can still consolidate proceedings before the immigration judge, and you can move to. And in fact, opposing counsel, and I don't know exactly, it looks like it's someone from their firm, it's Miwa Arai, and it's from the same firm, Reeves and Hadlon, which is where this opposing counsel is from. Now, they filed a motion to consolidate her hearings with her brothers, and this is on page 257. They never asked to consolidate with the father. Now, that's interesting because they knew that they could file the motion to consolidate, and yet they chose not to consolidate with the fathers. If you look at the father's board decision also, which is included in the record, I believe it's at page 26, you can see again that on behalf of the respondents, Daniel P. Hadlon was the person representing her father. Every opportunity existed to bring these cases together before the agency at the time of the hearing. They can't bring them together later because they chose to separate them before the IJ. That was their choice. I guess my big worry in this particular case, even given the questions that I gave to opposing counsel, is the bottom line, as I read through this case, is here is a dad and a daughter who were experiencing, to some effect, the same kind of stuff. But they weren't young. Now, just a minute, that's your argument, that they weren't. Well, maybe she wasn't old enough to know exactly what her father was going through, but the family was going through this stuff. So the father gets here, and he gets relief, and the daughter, just because she's young, just because she wasn't doing the same thing her dad was, but nonetheless in the same family, doesn't get relief. Why is this not a good case for you, the government, to get him and his client together and negotiate this? Why is this not a good case to mediate? Well, because, Your Honor, they chose to separate these cases. Whatever they did, we're now faced with a factual circumstance that Judge Smith is asking you about. The government doesn't have to do everything that it could do. What he's asking you is, now that you have the father here and the rest of the family here, I don't mean the cousins or the uncles, now that they're here, and she may have made a mistake in not consolidating, why isn't this a case, Judge Smith is asking, where you could talk to each other with our mediation service and see whether this can't be resolved in a sensible manner? The government's position is that she has absolutely no, there's no well-founded fear of persecution at this point. The government is not concerned about the petitioner's safety and targeting and well-being for all the reasons that were stated by the agency. I know, but you may not be concerned about her safety, but you may think that there could be a way to come to a sensible solution for her family. Judge Smith is asking you about the fact that the father and the others are all here and that she's not because she didn't consolidate her case. Well, it's not only that she didn't consolidate. I mean, her individual claim, it's her claim. And I understand what Your Honor is saying about, you know, because of the rest of her family here and because her family could potentially do something for her, you know, in the future. I mean, she's been here a very long time. That's another thing to consider. Well, Your Honor, and the government recognizes that, but that's also a reason why, I mean, her father was granted asylum in 2000, and here we are in 2011. And you never know, we may be here in 2020. Yes. So we might be able to avoid a lot of that if you two just talked. We do have an excellent mediation program, and we may get in touch with you about that. And we know the government will be very reasonable and empathetic when we get to a mediation discussion. I would like to add that we have done this in a number of immigration cases. And recently I had a personal experience with a case very similar to this, where the government did mediate successfully and kept the family together. I also like to point out she is, I think, about 45 or 46 years old at this point. It's not the case where, you know, I understand there are some situations that, you know. We're not trying to deport a 2-year-old this time. So, you know, we understand that she's a grown-up now. Well, she also was at the time of this claim, which is why she wasn't included in her father's application. I mean, that was the whole point. You really don't know that. You know why you didn't include her, but you really don't know why they didn't join. Well, they chose to try to get... They chose a different route, but did you take the deposition or something to know why they did? I don't think you did. And all I'm trying to say to you, Counsel, you seem very good and you seem very experienced, but you're listening to two pretty knowledgeable people... Yes, Your Honor. ...who've been here a long time, who are saying the government ought to think about this. Now, this guy, he's not been on the bench nearly as long as these two. I remember when I'd appear in front of them. I'm just this country kid from Idaho. I remember appearing in front of them, and I remember getting their advice, and all I'm saying to you, if it occurred to me, it might be something the government ought to think about. Not that it takes away from any of your arguments, because I asked the questions I thought you would want me to ask about, I don't think there's any future persecution here, and I don't think anything that her family did has anything to do with past persecution. And the government completely agrees with you. I understand you do. That's why I was asking the questions. Yes. All right. That's all I'm saying to you. Okay. Yes. All right. Thank you very much. Thank you very much. Thank you very much, Counselor. The case to start will be submitted. The next case on the calendar is United States v. Guzman.
judges: Nelson D. W., Reinhardt, Smith N. R.